■ In the Matter of JENNIFER M., Alleged to be a Juvenile Delinquent. MICHAEL COCCOMA, as Otsego County Attorney, Respondent; JENNIFER M., Appellant.—Weiss, J. Appeal from an order of the Family Court of Otsego County (Mogavero, Jr., J.), entered November 29, 1985, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 3, to adjudicate respondent a juvenile delinquent.

In July 1985, a juvenile delinquency charge was filed against respondent, then 12 years old, based on an incident in February 1985 when respondent purportedly assisted her mother in stealing various items from Ames Department Store in the City of Oneonta, Otsego County. After her motion to suppress certain inculpatory statements made to the store security officer and an Otsego County Sheriff was denied, respondent admitted the charge. Following a dispositional hearing, respondent was found to be a juvenile delinquent and placed in the custody of the Commissioner of Social Services for placement in foster care for an initial one-year period (Family Ct Act § 353.3). This appeal ensued.

Respondent maintains that Family Court erred in failing to suppress her statements as taken in violation of Family Court Act §§ 305.1 and 305.2. We disagree. The suppression hearing minutes show that David Giroux, the store detective, observed respondent leave the store carrying a gym bag and purse containing store merchandise which had not been paid for. Once outside, Giroux approached respondent and inquired as to whether she had forgotten to pay for anything. In response, respondent handed both bags to Giroux while the assistant store manager, Andrea Hall, looked on. At Giroux's request, respondent consented to accompany him back inside the store, where respondent's mother was confronted and agreed to join the group in the manager's office. While respondent contends the security guard grabbed her arm and pushed her, both Giroux and Hall testified that no physical force was used at any point during the incident. Upon entering the manager's office, Hall called the police while Giroux found various store items in the two bags, including four hats respondent had been observed holding in the store. Giroux read *Miranda* warnings to both respondent and her mother and inquired as to their identification. Respondent acknowledged taking the items in the gym bag and signed admission and release statements prepared by Giroux. She also stated without inquiry that "[t]his is what we do to live". Within the hour, Undersheriff Orrin Higgins arrived and was informed of respondent's admissions. Higgins identified himself as a police

officer, informed respondent and her mother of their *Miranda* rights, and then briefly inquired as to the incident. After respondent again admitted taking the items, Higgins issued an appearance ticket and released respondent to her mother's custody *(see,* Family Ct Act § 305.2 [4] [a]).

Respondent specifically contends that Giroux violated Family Court Act § 305.1 (3) by failing to turn her over to a police officer "without unnecessary delay". In her brief, respondent apparently concedes, and we agree, that both Giroux and Hall acted as private parties and were thus not subject to Family Court Act § 305.2, which pertains to peace officers or police officers *(see, People v Ray,* 65 NY2d 282, 286-287). Family Court resolved the conflict in testimony as to whether respondent was physically coerced by determining that both she and her mother voluntarily accompanied Giroux to the office. Finding that respondent was not in custody, the court concluded that the requirements of Family Court Act § 305.1 were not triggered. While the record is supportive of this conclusion *(see, Matter of Stanley C.,* 116 AD2d 209, 212-213), even were we to find that a custodial situation existed, the record confirms that Hall took immediate steps to contact the police who arrived without unreasonable delay. It is further significant that respondent's mother was present throughout this procedure, albeit as a suspect in the incident described. Consequently, the admissions made to Giroux were properly deemed admissible.

Respondent's further contention that Undersheriff Higgins violated Family Court Act § 305.2 by questioning her in a facility not designated as suitable by the State Court Administrator *(see,* Family Ct Act § 305.2 [4] [b]) is not dispositive since petitioner stipulated that the admissions made to Higgins would not be utilized as evidence-in-chief, but simply for rebuttal purposes. In any event, this statute does not create a per se rule mandating suppression of all statements taken outside a designated facility, but definitively requires that such a circumstance be considered as to the reasonableness of the police questioning *(see, Matter of Stanley C., supra,* p 215). Under the prevailing circumstances where the questioning was brief and conducted in the presence of respondent's mother, we discern no impropriety.

We further find no abuse of discretion in the disposition rendered. At the dispositional hearing, respondent's probation officer and her supervisor both recommended foster care due to the inadequacy of parental supervision. The instant shoplifting incident readily substantiates this finding, particularly

in view of respondent's explanation that it was necessary to steal in order "to live". Moreover, while respondent has no previous court record, the predispositional investigative report recounts a series of incidents involving respondent's use of alcohol and reflects a poor school attendance record. Our review of the record confirms that Family Court adopted the least restrictive alternative commensurate with the best interest of respondent and the community's protection (see, Family Ct Act § 352.2 [2]; *Matter of Katherine W.,* 62 NY2d 947).

We have examined respondent's remaining contentions of error and find them unavailing.

Order affirmed, without costs. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.